IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOEFFLER THOMAS P.C. f/k/a | : | |
| LOEFFLER THOMAS TOUZALIN LLP | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 15-5194 |
| SIMON FISHMAN, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                    **APRIL  11 , 2016**

Presently before the Court are the Motions to Dismiss filed by each of the named

Defendants in this case (ECF Nos. 4, 5, 6, 7, 8, 9, 10, 11).[1]  For the following reasons, the

Motions will be granted in part and denied in part.

**I.      BACKGROUND**

This is a breach of contract action in which the main Defendant, Samuel Fishman, an

attorney, attempts to avoid paying a significant legal bill for representation that he and others,

including many of his family members, received from Plaintiff Loeffler Thomas, P.C.

("Loeffler"), an Illinois law firm, in four separate legal matters.

---

[1] The following Motions to Dismiss were filed by Defendants:  Samuel Fishman (ECF
No. 4); Capital Car Co., Cars & Trucks, LLC, Seed Acquisitions, LLC, and Seed Acquisitions,
Inc. (ECF No. 5); Law Office of Samuel Fishman, P.C. (ECF No. 6); Daniel Fishman (ECF No.
7); Eric Fishman (ECF No. 8); Eugene Reed (ECF No. 9); Miriam Fishman (ECF No. 10); and
Simon Fishman (ECF No. 11).

A.     **Factual Background**[2]

Loeffler is a law firm organized under the laws of Illinois with its principal place of

business in Northbrook, Illinois.  (Compl. ¶ 2, ECF No. 1.)  Loeffler has no employed attorneys

in Pennsylvania; however, it has an affiliated office located in Philadelphia.  (*Id*.)  Defendant

Samuel Fishman is an attorney associated with the Law Office of Samuel Fishman, P.C.

("Fishman P.C."), which is also a named Defendant.  (*Id*. at ¶¶ 5, 9.)  Defendants Simon

Fishman, Miriam Fishman, Daniel Fishman, and Eric Fishman are relatives of Samuel Fishman.

(*Id*. at ¶¶ 3-4, 6-7.)

Loeffler represented Samuel Fishman and his law firm, Fishman P.C., in three separate

matters:  the "Third Circuit Appeal," the "Stretton Matter," and the "Ferrara Matter."  Loeffler

also represented all the named Defendants in a lawsuit referred to as the "Capital Car Matter."

The Complaint describes Loeffler's representation on the four matters separately.

1.     *The Ferrara Matter*

On December 29, 2008, Samuel Fishman and Fishman P.C. contacted Loeffler to

represent them with regard to a complaint filed by Ferrara Law Offices, P.C. ("Ferrara") and

Curran & Rassias, LLP ("Curran").  (*Id*. at ¶ 55.)  The complaint was brought against Samuel

Fishman and Fishman P.C. in the Philadelphia Court of Common Pleas, November Term, 2009

(Case No. 2986), and asserted claims for tortious interference with contract, conversion, and

unjust enrichment.  (*Id*. at ¶¶ 55-56.)  The claims arose out of Samuel Fishman and his firm's

representation of an individual who was previously represented by Ferrara and Curran in a

personal injury matter.  (*Id*. at ¶ 56.)

---

[2] In accordance with the standard of review for a Rule 12(b)(6) motion to dismiss, we will "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable" to Plaintiff, the non-moving party.  *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004) (citation omitted).

2

The instant Complaint asserts that "Samuel Fishman and Fishman P.C. agreed that Loeffler Thomas would bill the work done by Loeffler Thomas" at the following rates:  $275 per hour for senior attorneys, and $125 an hour by legal assistants.  (*Id*. at ¶ 57.)  On May 27, 2010, the Ferrara Matter was "marked Settled Discontinued and Ended."  (*Id*. at ¶ 59.)  Loeffler sent invoices to Samuel Fishman and Fishman P.C. dated May 14, 2009, August 26, 2009, October 16, 2009, January 29, 2010, July 28, 2010, and December 14, 2010.  (*Id*. at ¶ 60 & Ex. H.)

The amount invoiced to Samuel Fishman and Fishman P.C. on the Ferrara Matter totaled $56,430.92.  (*Id*. at ¶ 61.)  Samuel Fishman submitted a payment of $25,199.70 towards this balance, resulting in an outstanding balance on the Ferrara matter of $31,231.22.  (*Id*.)  The Complaint alleges that neither Samuel Fishman nor Fishman P.C. disputed the amount of the invoices or the work performed on the Ferrara Matter.  (*Id*. at ¶ 62.)  Loeffler made numerous demands for payment of the outstanding balance; however, Samuel Fishman and Fishman P.C. failed to remit payment.  (*Id*. at ¶ 63.)  Loeffler did not agree to forgive any of the balance.  (*Id*.)

2.    *The Third Circuit Appeal*

On May 7, 2009, Samuel Fishman and Fishman P.C. contacted Loeffler to assist in vacating a sanction lodged against them in the United States District Court for the Eastern District of Pennsylvania.  (*Id*. at ¶ 31.)  Samuel Fishman and Fishman P.C. were sanctioned $50,000 in the case, *State Farm Mutual Insurance Company v. Midtown Medical Center*, Case No. 02-7390 (E.D. Pa., filed Sept. 20. 2002) (the "Midtown Matter").  Samuel Fishman and Fishman P.C. agreed to the following billing rates for Loeffler attorneys:  $275 per hour for senior attorneys; $175 per hour for associate attorneys; and $125 an hour by legal assistants.  (*Id*. at ¶ 33.)  After a motion to vacate the sanction award was denied, Loeffler filed an appeal in the Third Circuit Court of Appeals.  (*Id*. at ¶¶ 34, 35.)  On September 14, 2011, the Third Circuit

3

affirmed the District Court's order denying the motion to vacate the sanction award.  (*Id*. at ¶ 37.)  The Third Circuit matter was closed on September 26, 2011.  (*Id*.)

Loeffler sent invoices to Samuel Fishman and Fishman P.C. on August 26, 2009, October 16, 2009, January 29, 2010, July 28, 2010, December 14, 2010, and December 5, 2012.  (*Id*. at ¶ 38 & Ex. D.)  The legal fees and costs billed to Samuel Fishman and Fishman P.C. on the Third Circuit Appeal totaled $103,189.76.  (*Id.* at ¶ 39.)  Of this total, Samuel Fishman submitted payment in the amount $36,735.81.  (*Id*.)  The balance on the Third Circuit Appeal totals $66,921.49.  (*Id*. at ¶ 40.)  The December 5, 2012 invoice included a "professional discount" of $12,500 to Samuel Fishman and Fishman P.C. "in exchange for their promise to pay the outstanding fees in the Third Circuit Appeal."  (*Id*.)  The Complaint alleges that neither Samuel Fishman nor Fishman P.C. disputed the amount of the invoices or the work performed by Loeffler on the Third Circuit Appeal.  (*Id*. at ¶ 41.)

    *3.  The Stretton Matter*

On April 7, 2010, Samuel Fishman and Fishman P.C. contacted Loeffler regarding a complaint they wished to file against Samuel Stretton, Esquire.  (*Id*. at ¶ 43.)  Stretton is a Philadelphia Attorney who represented Samuel Fishman and Fishman P.C. with regard to a Third Circuit appeal of a sanction award lodged against them in the Midtown Matter.  (*Id*. at ¶ 44.)  Samuel Fishman and Fishman P.C. alleged that Stretton failed to adequately represent them in defending against the sanction award, that he breached his fiduciary duties, and that he made fraudulent misrepresentations.  (*Id*. at ¶ 45.)  The complaint in the Stretton matter was filed in the Philadelphia Court of Common Pleas, April Term, 2010 (No. 01792), and asserts claims for breach of contract, professional negligence, and fraud.  (*Id*. at ¶ 46 & Ex. E.)

Samuel Fishman and Fishman P.C. agreed that Loeffler would bill at the following rates:

$275 per hour for senior attorneys; $285 per hour for of counsel attorneys; $175 per hour for associate attorneys; and $125 per hour by legal assistants.  (*Id*. at ¶ 47.)  They also agreed that Loeffler would keep Samuel Fishman and Fishman P.C. informed of all work done on the Stretton matter.  (*Id*.)  In September 2011, Samuel Fishman and Fishman P.C. withdrew their complaint against Stretton.  (*Id*. at ¶ 49.)  Loeffler sent invoices to Samuel Fishman and Fishman P.C. on December 14, 2010 and November 26, 2012.  (*Id*. at ¶ 50 & Ex. F.)   The amount of fees and costs incurred on the Stretton Matter totaled $57,178.60, and of that amount, only $5,250.00 was paid by Samuel Fishman.  (*Id*. at ¶ 51.)  Loeffler has made numerous unsuccessful demands on Samuel Fishman and Fishman L.P. for payment of the outstanding balance.  (*Id*. at ¶ 54.)

Loeffler alleges that it offered Samuel Fishman and Fishman P.C. a "professional discount" in the amount of $12,500, which was reflected on the November 26, 2012 invoice.  (*Id*. at ¶ 52.)  The discount was offered by Loeffler "in exchange for their promise to pay the outstanding fees in the Stretton Matter."  (*Id*.)

### 4.    *The Capital Car Matter*

On November 10, 2010, Samuel Fishman contacted Loeffler regarding representation related to a complaint filed by State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Insurance Company in the Eastern District of Pennsylvania (the "Capital Car Matter").  (*Id*. at ¶ 16.)  Samuel Fishman sought representation "on behalf of himself and as agent for" the other nine Defendants named in the Complaint.  (*Id*.)  The plaintiff in the Capital Car Matter asserts claims for a declaratory judgment, violation of the Pennsylvania Uniform Fraudulent Transfer Act, 51 Pa. Cons. Stat. § 5101, *et seq*. ("PUFTA"), conspiracy to violate PUFTA, civil conspiracy, concerted tortious action, and for a constructive trust.  (*Id*. at ¶ 17 & Ex. A.)

The terms of Loeffler's representation of the defendants in the Capital Car Matter, including the billing rates of attorneys "were discussed with Samuel Fishman personally." (*Id*. at ¶ 18.) Loeffler specifically advised Samuel Fishman about the billing rates for Loeffler partners, of counsel attorneys, associates, and paralegals who would work on the matter. (*Id*. at ¶ 19.) Specifically, the following billing rates were agreed to: $275 per hour for senior attorneys; $175 per hour for associate attorneys; and $125 an hour by legal assistants. (*Id*. at ¶ 20.) Loeffler and Samuel Fishman also agreed that Loeffler would keep Fishman apprised of all the work done by Loeffler on the Capital Car Matter. (*Id*. at 20.) During the course of the representation, Loeffler "worked diligently and vigorously to represent" the defendants in the Capital Car Matter, which resulted in a successful reduction of the plaintiff's demand by approximately 50%. (*Id*. at ¶¶ 21, 23.)

Loeffler sent invoices to Samuel Fishman dated June 7, 2012, June 25, 2012, October 31, 2012, and January 4, 2013. (*Id*. at ¶ 24.) Each of the invoices provides the total fees incurred and detailed descriptions of the work performed by Loeffler attorneys for the relevant time period. (*Id*.) During the summer of 2012 through December 2012, the defendants in the Capital Car Matter did not timely pay the invoices. Loeffler alleges that during this time, "Samuel Fishman requested that Loeffler Thomas be patient and continu[e] to render[] professional services," despite not being paid for those services. (*Id*.) Samuel Fishman made a payment to Loeffler in December of 2012; however, that payment was in arrears for work performed in June of 2012. According to Loeffler, "Samuel Fishman continued to request legal services from Loeffler Thomas and affirmatively led Loeffler Thomas to believe that it would be paid for its legal services." (*Id*.) Loeffler billed the defendants in the Capital Car Matter a total amount of $384,493.70 for work done on the Capital Car Matter. (*Id*. at ¶ 25.) Of that amount, Samuel

Fishman submitted payment in the amount of $128,645.94.  (*Id.*)  The total unpaid balance on the Capital Car Matter is $255,847.76.  (*Id.*)

Loeffler attempted to work with the defendants in the Capital Car Matter on the outstanding balance; however, it has not received payment from Samuel Fishman or any of Defendants since December 2012.  (*Id.* at ¶ 27.)  On December 26, 2012, Defendants terminated Loeffler as counsel in the Capital Car matter.  (*Id.* at ¶ 28.)  As a result of Defendants' continued failure to pay for legal services, Loeffler filed a motion to withdraw as counsel in that matter. (*Id.* at ¶ 29.)  On September 16, 2013, the court in the Capital Car Matter granted Loeffler's request.  (*Id.*)  Loeffler seeks judgment of the outstanding balance on all four matters, which totals $405,922.07.  (*Id.* at ¶ 1.)

### B.    Procedural History

On September 17, 2015, Loeffler filed a Complaint against all Defendants.  The Complaint alleges 13 causes of action.  For each of the four matters described in the Complaint—the Capital Car Matter, the Third Circuit Appeal, the Stretton Matter, and the Ferrara Matter—Plaintiff asserts claims for breach of contract, account stated, and quantum meruit.  Plaintiff also asserts a claim in Count 13 for pre-judgment attachment of Defendants' assets, or in the alternative, expedited proceedings.[3]

---

[3] Each of the 13 counts assert the following claims:  breach of contract regarding the Capital Car Matter (Count 1); account stated regarding the Capital Car Matter (Count 2); quantum meruit regarding the Capital Car Matter (Count 3); breach of contract regarding the Third Circuit Appeal (Count 4); account stated regarding the Third Circuit Appeal (Count 5); quantum meruit regarding the Third Circuit Appeal (Count 6); breach of contract regarding the Stretton Matter (Count 7); account stated regarding the Stretton Matter (Count 8); quantum meriut regarding the Stretton Matter (Count 9); breach of contract regarding the Ferrara Matter (Count 10); account stated regarding the Ferrara Matter (Count 11); quantum meruit regarding the Ferrara Matter (Count 12); and prejudgment attachment of Defendants' assets (Count 13).

Loeffler had previously filed an action against these same Defendants in the Illinois state court, on October 10, 2014.  The action was captioned as *Loeffler Thomas v. Samuel Fishman, et al.* (Cook Cnty Cir. Ct., No. 14-L-10564).  (Pl.'s Resp. 1-2 & Ex. A, ECF No. 12.)  The Cook County Circuit Court denied Defendants' motion to dismiss based on lack of jurisdiction.  (*Id*. at 2 & Ex. A.)  Defendants thereafter sought leave to file an appeal of the circuit court's order.  Loeffler claims that "in order to avoid delays caused by the appeal, [it] filed the present action and voluntarily dismissed the Illinois case."  (*Id*.)  Defendants contend that Loeffler's explanation for dismissing the Illinois action is inaccurate.  (Defs.' Reply 5-6, ECF No. 24.)  Defendants assert that Loeffler failed to file its appellate brief despite being granted two extensions of time to do so, and waited over 150 days after Defendants filed their appellate brief to seek dismissal of the action.  (*Id*. at 5.)

On October 30, 2015, Defendants filed the instant Motions to Dismiss.  (Fishman Mot. Dismiss, ECF No. 4.)[4]  On November 13, 2015, Loeffler filed a Consolidated Response to the Motions to Dismiss.  (Pl.'s Resp.)  On December 3, 2015, Defendant Samuel Fishman filed a Reply (Defs.' Reply), to which each of the other Defendants joined (ECF Nos. 25-31).

On January 18, 2016, Defendants filed a motion seeking the disqualification of Loeffler's counsel of record, Diana Kadish, Esquire (ECF No. 40), to which Loeffler filed a response on January 29, 2016 (ECF No. 48).[5]  An oral argument was held on January 19, 2016 before Chief Judge Tucker.  (Jan. 19, 2016 Hr'g Tr. (on file with Court).)  At the oral argument, the parties addressed both the instant Motions to Dismiss and the motion to disqualify.

---

[4] Each of the eight Defendants in this matter filed a separate Motion to Dismiss.  (*See* ECF Nos. 4, 5, 6, 7, 8, 9, 10, 11.)  The arguments raised in the Motions are nearly identical to the arguments raised by Defendant Samuel Fishman in his Motion to Dismiss.  For ease or reference, we will cite only to Samuel Fishman's Motion.

[5] The Court will address the motion for disqualification in a separate Order.

On January 31, 2016, Defendants Daniel Fishman, Eric Fishman, Miriam Fishman, Simon Fishman, and Eugene Reed filed a motion to reassign the case from Judge Tucker to another Judge in the Eastern District of Pennsylvania. (ECF No. 49.)  On February 5, 2016, Judge Tucker granted Defendants' motion for reassignment (ECF No. 55), and the case was transferred to this court.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Failure to state a claim upon which relief can be granted is a basis for dismissal of the complaint.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009) (citation omitted).

In determining whether dismissal is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id*. at 210-11.  Next, courts determine whether the

facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 211 (internal quotation marks and citation omitted).  Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *See McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

Defendants raise numerous arguments in support of dismissal of the Complaint.  First, Defendants contend that the entire action should be dismissed because Loeffler failed to join necessary parties under Rule 12(b)(7).  Second, Defendants argue that the Loeffler's claims with regard to the Third Circuit Appeal, the Stretton Matter, and the Ferrara Matter are all barred by the statute of limitations.  Third, Defendants contend that Loeffler has failed to state claims for breach of contract, account stated, and quantum meruit.  Finally, Defendants argue that Loeffler's claim for pre-judgment attachment of assets is not supportable as a matter of law.

### A.   Joinder of Additional Parties

Defendants seek dismissal of the Complaint under Rule 12(b)(7), which provides that a court may dismiss claims for failure to join an indispensable party.  Rule 19 outlines a two-step analysis for determining whether joinder of a party is indispensable.  Under Rule 19(a), the Court first determines whether an absent party is "necessary" to the dispute.  *See* Fed. R. Civ. P. 19(a).  If the absent party is necessary, and joinder would not deprive the court of subject matter jurisdiction (e.g., destroy diversity), then the Court must next determine whether joinder of the absent party is feasible under Rule 19(b).  *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993) ("[A] holding that joinder is compulsory under Rule 19(a)

is a necessary predicate to a district court's discretionary determination under Rule 19(b) that the case must be dismissed because joinder of the party is not feasible and the party is indispensable to the just resolution of the controversy.").

Defendants contend that two individuals who were represented by Loeffler during the Capital Car Matter—Esther Fishman and Jacob Fishman—are necessary parties, and should have been joined to this action.[6]  Defendants also argue that joinder of Esther Fishman is not feasible because she is a United States citizen who resides abroad in Israel, and her joinder would destroy the Court's subject matter jurisdiction.  (Samuel Fishman Mot. 3.)  In support of their argument, Defendants point to excerpts of the legal invoices, which reveal that Loeffler was retained by Jacob and Esther Fishman in the Capital Car Matter, and performed some work in their defense. Defendants contend that the Court is unable to grant complete relief among the existing parties without the presence of these individuals.

A party is "necessary" if "in that person's absence, the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  "A Rule 19(a)(1) inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action. The effect a decision may have on the absent party is not material."  *Janney*, 11 F.3d at 405 (citation omitted).  In *Janney*, the Third Circuit considered whether a court could accord complete relief on a breach of contract claim when only one of the two co-obligors had been joined as a defendant in the action.  *Id.*  The Court observed that parties to contracts creating joint liability are generally necessary parties; however, parties to contracts creating joint and several liability are not.  *See id.*; *see also Carriage House Condos. GP, Inc. v. Deraimo*, No. 07-2120, 2008 U.S. Dist. LEXIS 4653, at *6-7 (E.D. Pa. Jan. 22, 2008) (discussing *Janney*).  The

---

[6] Defendants also contend that Alexander Fishman is a necessary party and should have been joined.  The Court has learned from the parties' briefing on these Motions to Dismiss that Alexander Fishman is deceased.

Third Circuit recognized "a strong trend in favor of a principle that co-signers or co-obligors on a contract are jointly and severally liable for its performance." *Janney*, 11 F.3d at 405; *see also Carriage House*, 2008 U.S. Dist. LEXIS 4653, at *6.

The Complaint in this case describes an oral agreement by Samuel Fishman "on behalf of himself and on behalf of all the Capital Car Defendants" to "retain[] Loeffler Thomas to defend them in the Capital Car Matter."  (Compl. ¶ 16; *see also id.* (stating that Samuel Fishman retained Loeffler "on behalf of himself and as agent for" the other Capital Car Defendants).)  "In Pennsylvania, whether liability on a contract is joint or joint and several seems to be treated as a question of construction or interpretation, not as a rule of law." *Janney*, 11 F.3d at 405.  The language in the Complaint describing the agreement reveals that Samuel Fishman agreed to the retention of Loeffler on behalf of himself and on behalf of all defendants in the Capital Car Matter, as co-obligors to the agreement.  The fact that it was not specifically agreed that the obligation would be joint and several is of no consequence. *See Braverman Kaskey, P.C. v. Toidze*, 2011 U.S. Dist. LEXIS 117569, 5-7 (E.D. Pa. Oct. 11, 2011).  The retention of Loeffler imposed joint and several liability on the Capital Car Defendants named in the Complaint.  As a result, full recovery may be had against any of the Capital Car Defendants, and neither Esther Fishman nor Jacob Fishman is a necessary party. *Janney*, 11 F.3d at 405.

Because we determine that Esther and Jacob Fishman are not necessary parties under Rule 19(a), we need not consider Defendants' related argument that joinder of Esther Fishman is not feasible as a result of her being domiciled in Israel.   Defendants' request to dismiss the action under Rule 12(b)(7) will be denied.

**B.      Statute of Limitations for the Third Circuit Appeal, the Stretton Matter, and the Ferrara Matter (Counts 4 through 12)**

Defendants seek to dismiss all of Loeffler's claims associated with the Third Circuit Appeal, the Stretton Matter, and the Ferrara Matter, on the basis that the claims are barred by the statute of limitations.  With respect to each of the three matters, Loeffler asserts claims for breach of contract, account stated, and quantum meruit.

In Pennsylvania, the statute of limitations for breach of contract is four years.  42 Pa. Const. Stat. § 5525(a)(3) (providing four-year statute of limitations for "[a]n action upon an express contract not founded upon an instrument in writing"); *see also Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997).  The four-year statute of limitations also applies to quantum meruit claims, *see Kenis v. Perini Corp.*, 682 A.2d 845, 849 (Pa. Super. Ct. 1996), and to account stated claims, *see Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 464-65 (E.D. Pa. 2008).  The statute of limitations begins to run on a claim from the time the action accrues. *Cole*, 701 A.2d at 989; *see also Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (noting that under Pennsylvania law, "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises") (citation omitted).  A breach of contract claim accrues at the time of breach.  *Cole*, 701 A.2d at 989.

Samuel Fishman contends that the claims accrued when the last payment was made on the invoices for each of the three matters.  We agree.  *See Packer Soc'y Hill Travel Agency v. Presbyterian Univ. Med. Ctr.*, 635 A.2d 649, 652-53 (Pa. Super. Ct. 1993) (holding that statute of limitations began to run on breach of contract claims on day that the defendant ceased making payments under the agreement).

The billing records for the Third Circuit Appeal show that the last payment made by Samuel Fishman to Loeffler on the outstanding invoices occurred on January 3, 2011.  (*See*

Compl. Ex. D.)  Therefore, Loeffler had until January 3, 2015 to file the Complaint.  The

Complaint was filed in this Court on September 17, 2015, over eight months after the statute of

limitations had expired.  The claims related to the Third Circuit Appeal are therefore barred.

Similarly, the billing records for the Stretton Matter reveal that the last payment made was on

January 3, 2011.  (*See* Compl. Ex. H.)  Therefore, the claims related to the Stretton Matter are

also barred by the statute of limitations.  With respect to the Ferrara Matter, the billing records

show that the last payment was made on February 22, 2010.  (*See* Compl. Ex. H.)  Loeffler had

until February 22, 2014 to file an action on these claims.  Loeffler waited until over a year and a

half after that date to bring this action.  The claims related to the Ferrara Matter are also barred

by the statute of limitations.

       In an effort to save its claims in these three matters, Loeffler raises several arguments.

None of the arguments have merit.  First, Loeffler contends that because most of the legal work

was actually done in their Illinois offices, the Illinois statute of limitations should apply to this

matter, and not the Pennsylvania statute of limitations.  In Illinois, the statute of limitations on a

breach of a written contract is ten years.  *Strategic Lending Solutions LLC v. United Def. Group

LLP*, No. 13-8232, 2014 U.S. Dist. LEXIS 152721, at *17 (N.D. Ill. Oct. 28, 2014) (citing 735

Ill. Comp. Stat. Ann. 5/13-206).  For claims based on breach of oral contracts, the limitations

period is five years.  *Id*. (citing 735 Ill. Comp. Stat. Ann. 5/13-205).  Loeffler's contention that

its claims are not barred under the Illinois statute of limitations is based on a misunderstanding of

conflict-of-law principles.  A federal court must apply the substantive laws of its forum state in

diversity actions, such as this one, including the state's statute of limitations.  *Stephens v. Clash*,

796 F.3d 281, 289 (3d Cir. 2015).  Accordingly, we must apply Pennsylvania law to determine

the applicable statute of limitations.  *Id.*

14

Pursuant to Pennsylvania's borrowing statute, "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa. Const. Stat. § 5521(b). Even assuming that Loeffler's claims with regard to the Third Circuit Appeal, the Stretton Matter, and the Ferrara Matter accrued in Illinois, the Pennsylvania four-year statute of limitations would nevertheless apply because it is the shorter of the limitations periods. Pennsylvania's shorter statute of limitations period applies here and bars Loeffler's claims. *See Donovan v. Idant Labs*., 625 F. Supp. 2d 256, 265 (E.D. Pa. 2009) (relying on Pennsylvania's borrowing statute in applying Pennsylvania's four-year statute of limitations to contract claim because it was shorter than New York's six-year limitations period), *aff'd*, 374 F. App'x 319 (3d Cir. 2010).

Next, Loeffler contends that the claims are not barred because the statute of limitations relates back to the time that the state court action was filed in Illinois. In other words, Loeffler maintains that the operative filing date for the claims is October 10, 2014, the day the action was filed in the Circuit Court of Cook County, Illinois, and not September 17, 2015, the day the Complaint was filed in this Court. Loeffler has cited no authority to support this argument, and merely references it in a footnote. Contrary to Loeffler's contention, the filing of an earlier state court action does not toll the statute of limitations for purposes of a subsequent federal action based on the same claims. *McCreary v. Redevelopment Auth. of the City of Erie*, 427 F. App'x 211, 215 (3d Cir. 2011) (rejecting argument that the statute of limitations on plaintiff's federal claims should be tolled during the years she pursued claims in state court). "Courts considering the implication of a state court action on the statute of limitations for a federal action have held that a plaintiff's federal action is not tolled by the filing of an earlier state suit." *Nellom v. Luber*,

No. 02-2190, 2004 U.S. Dist. LEXIS 7103, at *13 (E.D. Pa. Mar. 18, 2004) (citing cases and concluding that plaintiff's earlier state court action did not toll the statute of limitations for the same claims filed in a subsequent federal action); *see also Ammlung v. City of Chester*, 494 F.2d 811, 816 (3d Cir. 1974) ("The running of a Pennsylvania statute of limitations against a federal cause of action is not tolled under Pennsylvania concepts of tolling by the commencement of a similar suit in state court.") (citation omitted).

Loeffler also contends that, with respect to the Third Circuit Appeal and the Stretton Matter, the claims did not accrue until December 5, 2012, and November 26, 2012, respectively, the dates that the last invoices were sent in those matters.  Included in those invoices was a statement by Loeffler providing a "professional discount of $12,500 [ ] to Samuel Fishman and Fishman P.C. in exchange for their promise to pay the outstanding fees."  (Compl. ¶¶ 40, 52.) Loeffler's argument suggests application of the acknowledgment doctrine.  "Under the acknowledgment doctrine, 'a statute of limitations may be tolled or its bar removed by a promise to pay debt." *Raab v. Lander*, 427 F. App'x 182, 187 (3d Cir. 2011) (quoting *Huntingdon Fin. Corp. v. Newtown Artesian Water Co.*, 659 A.2d 1052, 1054 (Pa. Super. Ct. 1995)).  Loeffler contends that the acknowledgment doctrine operates to toll the statute of limitations because Samuel Fishman made a promise in late 2012 to pay the remainder of the outstanding debt owed to Loeffler for its legal representation.  In support, Loeffler relies on an email and a letter sent by Samuel Fishman to Loeffler in December 2012.[7]  Samuel Fishman's promise in December 2012

---

[7]  In these documents, Samuel Fishman states that he will "make sure [Loeffler] get[s] paid" (Pl.'s Resp. Ex. 28), and that Loeffler "will be paid every penny that is due to [it]" (*id*. at Ex. 29). The letter and the email were not attached as exhibits to the Complaint, but were instead provided to the Court as exhibits to Loeffler's Response to the Motions to Dismiss.  Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993).  The court may also consider "documents whose contents are alleged in the complaint and whose authenticity no party question, but which are not

to pay the invoices at some unspecific future time is not sufficient to trigger application of the acknowledgment doctrine and toll the statute of limitations.  Under the doctrine, the acknowledgment must be "consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time."  *Raab*, 427 F. App'x at 187 (citation omitted).  "A simple declaration of an intention to discharge an obligation is not the equivalent of a promise to pay, but is more in the nature of a desire to do so, from which there is no implication of a promise."  *Id.* (citation omitted).  The acknowledgment doctrine does not toll the statute of limitations in this case.

Finally, Loeffler contends that the quantum meruit claims are not barred by the four-year statute of limitations because they accrued at the time that the legal representation ended, and not when the last payment was made on the legal bills.  Claims for quantum meruit generally accrue "at the time the attorney ceases representing the client."  *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Fowkes v. Shoemaker*, 661 A.2d 877, 880 (Pa. Super. Ct. 1995)).  Loeffler contends that its representation of Samuel Fishman and the other Defendants was a "continuing one" that did not end until December 2012, when Loeffler was terminated, and that based on this, the quantum meruit claims are not barred by the four-year statute of limitations.  Loeffler's argument implies application of Pennsylvania's continuing contract doctrine, which is otherwise known as the test of continuity.  Under this doctrine, if a contract is deemed "continuous," then "the statute of limitations does not begin to run until the termination of the

physically attached to the pleading."  *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 560 (3d Cir. 2002).  The court may not consider other documents attached to the motion to dismiss without first converting the motion into one for summary judgment.  *Id.*  Although the Complaint makes reference to the professional discount offered to Samuel Fishman in exchange for his promise to pay the outstanding amounts due to Loeffler, it does not specifically mention the letter or the e-mail, or their content.  Therefore, we may not consider these documents without converting the motion to one for summary judgment, which we decline to do.  However, even if we were to consider the content of the exhibits, they do not support Loeffler's argument that the acknowledgment doctrine applies and tolls the statute of limitations.

contractual relationship between the parties." *Thorpe v. Schoenbrun*, 195 A.2d 870, 872 (Pa. Super. Ct. 1963) (citation and internal quotation marks omitted); *see also Jodek Charitable Trust, R.A. v. Vertical Net Inc.*, 412 F. Supp. 2d 469, 475 (E.D. Pa. 2006) (describing the continuing contract doctrine).   To determine whether the test of continuity applies, courts look to see "whether the services were performed under one continuous contract, whether express or implied, with no definite time fixed for payment, or were rendered under several separate contracts." *Thorpe*, 195 A.2d at 872.

Based on the allegations in the Complaint, the agreement between the parties does not constitute a continuing contract.  The Complaint states that Loeffler was retained on four separate and distinct dates with respect to each of the matters.  Each of the four matters were separately billed and invoiced.  The matters are described separately in the Complaint, pertain to different claims and defenses, and indicate different end dates.  The test of continuity does not apply here.  The quantum meruit claims were not timely filed.

Accordingly, all claims related to the Third Circuit Appeal (Counts 4, 5, 6), the Stretton Matter (Counts 7, 8, 9), and the Ferrara Matter (Counts 10, 11, 12) will be dismissed as barred by the applicable four-year statute of limitations.

### C.      Capital Car Matter (Counts 1 through 3)

The three claims related to the Capital Car Matter—breach of contract (Count 1), account stated (count 2), and quantum meruit (count 3)—are not barred by the statute of limitations. Defendants do not dispute this.  Nevertheless, Defendants seek dismissal of these three claims on other grounds.  None of those grounds have merit.

1.      *Breach of Contract (Count 1)*

In Pennsylvania, the elements of a breach of contract claim are:  "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Defendants argue that Loeffler has failed to allege the first element—existence of a contract, including its essential terms because there was no written fee agreement between the parties.  Defendants cite to Rule 1.5(b) of the Pennsylvania Rules of Professional Conduct in support of this argument.  Rule 1.5(b) states that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, *in writing*, before or within a reasonable time after commencing the representation."  Pa. R. Prof. C. 1.5(b) (emphasis added).  Defendants' argument fails as a matter of law because compliance with the Pennsylvania Rules of Professional Conduct merely gives rise to disciplinary action against an attorney.  It does not create separate claims or defenses to claims.  The preamble to the Professional Rules states that "violation of a [Professional] Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached."  Pa. R. Prof. C. Preamble; *see also* 204 Pa. Code § 81.2(19) (same).  Defendants' motion to dismiss the breach of contract claim related to the Capital Car Matter will be denied.[8]

---

[8] Defendants' argument that Loeffler failed to properly allege an agency relationship is meritless and deserves little attention.  Defendants contend that the Complaint states an agency relationship between Samuel Fishman and the rest of the Defendants on the Capital Car Matter, but does not provide sufficient allegations describing that relationship.  The Complaint alleges that "Samuel Fishman, on behalf of himself and as agent for" the other Defendants in the Capital Car Matter "sought out . . . Loeffler Thomas."  (Compl. ¶ 16.)  The Judge in the Circuit Court of Cook County, Illinois, when presented with this same argument, observed that "[p]roof beyond Loeffler's sworn statement is unnecessary, especially in light of defendants' failure to explain

2.      *Account Stated (Count 2)*

The Capital Car Defendants also move to dismiss the account stated claim.  An account stated claim is a variety of a contract claim.  *Richburg*, 247 F.R.D. at 465.  "An account stated is an account in writing, examined, and expressly or impliedly accepted by both parties thereto." *Braverman Kaskey, P.C. v. Toidze*, No. 09-3470, 2011 U.S. Dist. LEXIS 117569, at *10 (E.D. Pa. Oct. 12, 2011) (citing *Capital One Bank (USA) NA v. Clevenstine*, 7 Pa. D. & C.5th 153, 157 (Pa. County Ct. 2009)).  It "traditionally arises when two parties, who engage in a series of transactions with one another, come together to balance the credits and debits and fix upon a total amount owed."  *Richburg*, 247 F.R.D. at 464 (citing *David v. Veitscher Magnesitwerke Actien Gesellschaft*, 348 Pa. 335, 35 A.2d 346, 349 (Pa. 1944)).

Defendants contend that Loeffler fails to properly plead an account stated claim because it merely alleges that the amounts of the invoices were not disputed, and this is not sufficient. Defendants rely on a *Line Systems Inc. v. Sprint Nextel Corp.*, No. 11-6527, 2012 U.S. Dist. LEXIS 102518 (E.D. Pa. July 24, 2012).  In that case, the court stated that "[a]n allegation that a defendant never contested its bills is not sufficient to show acquiescence in the correctness of an account."  *Id*. at 20 (dismissing account stated claim for failure to plead sufficient allegations). *Line Systems* is easily distinguished.  In that case, it was clear that the defendant never paid any of the amounts it allegedly owed.  Here, Defendants made payments on the Capital Car Matter invoices.  "Where a client receiving legal services makes payments without protest, its silence will be construed as an implicit consent to the correctness of the legal fees and are liable for any outstanding bills."  *Connolly, Epstein, Chicco, Foxman, Engelmyer & Ewing v. Fanslow*, No. 95-2835, 1995 U.S. Dist. LEXIS 17231, at *10-15 (E.D. Pa. Nov. 15, 1995); *see also Massullo v.*

---

how plaintiff happened to [be] their attorney of record in the case were [it] not for Fishman." (Pl.'s Resp. Ex. A.)  We agree with this observation.  Loeffler represented all Defendants in the Capital Car matter, and not one of those Defendants rejected that representation.

*Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C.*, No. 98-116, 1999 U.S. Dist. LEXIS 7177, at

*7-9 (E.D. Pa. May 17, 1999) (same).

The Complaint alleges that Samuel Fishman made a partial payment for the legal work

done on the Capital Car Matter.  Specifically, Fishman submitted payments that totaled over

$128,000, in satisfaction of a legal bill that was more than nearly three times that amount.  The

Complaint also alleges that despite failing to make timely payments on the invoices in the

Capital Car Matter, Samuel Fishman "requested that Loeffler Thomas be patient and continue to

render services."  (Compl. ¶ 24.)  The Complaint also alleges that "Samuel continued to request

legal services from Loeffler Thomas and affirmatively led Loeffler Thomas to believe that it

would be paid for its legal services."  (*Id.*)  There are no allegations that Defendants ever rejected

the invoices or disputed the amounts incurred or work done.  Viewing these allegations in a light

most favorable to Plaintiff, we are satisfied that they demonstrate that Defendants conceded to

the "correctness" of the legal fees.[9]  Defendants' request to dismiss the account stated claim will

therefore be denied.

        3.     *Quantum Meruit (Count 3)*

Defendants seek dismissal of the quantum meruit claim, contending that quantum meruit

is not a cause of action in Pennsylvania, but instead is an equitable remedy.[10]  Courts treat claims

---

[9] Loeffler also contends that its offering of a professional discount, and Samuel
Fishman's acceptance of the same, contingent on his paying the remainder of the balance
supports a finding that Defendants acquiesced in the correctness of the account.  (Pl.'s Resp. 10.)
However, a review of the Complaint reveals that professional discounts were offered with
respect to bills for the Third Circuit Appeal, the Stretton Matter, and the Ferrara Matter.  The
Complaint does not allege that the discount was offered with respect to the Capital Car Matter.

[10] Although Defendants seek dismissal of the quantum meruit claims asserted in all four
matters encompassed in the Complaint, we have determined that the claims with respect to the
Third Circuit Appeal, the Stretton Matter, and the Ferrara Matter are barred by the statute of
limitations and must be dismissed.  The discussion of Defendant's remaining arguments with
respect to the quantum meruit is limited to the Capital Car Matter (Count 3).

of quantum meruit and unjust enrichment synonymously. *Mitchell v. Moore*, 729 A.2d 1200, 1202 n.2 (Pa. Super. Ct. 1999) ("A cause of action in quasi-contract for *quantum meruit*, a form of restitution, is made where one person has been unjustly enriched at the expense of another.") *Powers v. Lycoming Engines*, 328 F. App'x 121, 126 (3d Cir. 2009) ("Unjust enrichment . . . an equitable remedy and synonym for quantum meruit, is a form of restitution.") (citation and internal quotation marks omitted). Whether or not Loeffler has titled the claim "quantum meruit or unjust enrichment is of no consequence.

"The elements of unjust enrichment under Pennsylvania law have been defined as follows: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Citizens Bank of Pa. v. Reimbursement Techs.*, 609 F. App'x 88, 95 (3d Cir. 2015) (citation omitted). Loeffler alleges in the Complaint that Defendants accepted Loeffler's legal services and benefitted from these services, outlining all the various tasks it performed on the matter. Loeffler also alleges that the reasonable value of these services that benefitted Defendants totaled $255,847.76, and that Defendants would be unjustly enriched without reimbursement. The allegations are sufficient at this juncture to state a claim for unjust enrichment.

Defendants' reliance on *Ray Angelini, Inc. v. SEC BESD Solar One, LLC*, No. 11-1093, 2011 WL 5869906, at *3 (M.D. Pa. Nov. 21, 2011), is misplaced. In that case, the court merely observed that a plaintiff may not pursue claims for *both* quantum meruit and unjust enrichment because they are essentially the same. In addition, the court dismissed the quantum meruit claim because the plaintiff did not oppose its dismissal, not because, as Defendants here contend, quantum meruit claims are not recognized independent causes of action in Pennsylvania. *Id.*

Here, Loeffler did not assert claims for both quantum meruit and unjust enrichment. Instead, Loeffler asserted one claim that sounds in both, even though it is titled quantum meruit. Accordingly, Defendants' motion to dismiss the quantum meruit claim will be dismissed.

        **D.**        **Pre-Judgment Attachment (Count 13)**

In Count 13, Loeffler seeks pre-judgment attachment and seizure of Defendant's assets pending a determination on the merits of the claims. (Compl. ¶ 135.) Defendants request dismissal of Count 13, contending that there is no legal basis to authorize pre-judgment attachment of their assets. Loeffler does not respond to this argument in its Response to the Motions to Dismiss. Therefore, we presume Loeffler has abandoned this claim. In any event, there is no merit to Loeffler's claim for pre-judgment attachment of Defendants' assets. Federal district courts lack the authority to freeze a defendant's assets to assure that the plaintiff will be able to satisfy a judgment should the plaintiff prevail. *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999); *see also Karpov v. Karpov*, 555 F. App'x 146, 147 (3d Cir. 2014) (affirming district court's determination that it "lacked the authority" to issue an injunction preventing the defendant from transferring assets). Accordingly, Count 13 will be dismissed.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss will be granted in part, and denied in part, consistent with this Memorandum.  Counts 4 through 13 will be dismissed.  The Motion will be denied as to Counts 1 through 3.

An appropriate Order follows.


**BY THE COURT:**


_____

**R. BARCLAY SURRICK, J.**